United States District Court
Southern District of Texas
**ENTERED**
February 06, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AIMEE WOOLWINE, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-16-3727 |
| § | |
| NANCY A. BERRYHILL, ACTING § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending in this appeal of an adverse final decision of the social security administration are the parties' cross motions for summary judgment (Document Nos. 13 & 15). Having considered the motions, each sides' response to the other's motion (Document Nos. 16 & 17), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court[1] ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, and this matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings.

---

[1] On November 7, 2017, pursuant to the parties consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 12.

## I. Introduction

Plaintiff Aimee Woolwine ("Woolwine") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits (DIB). In this appeal, Woolwine argues in one claim that remand is warranted because new evidence she submitted to the Appeal Council, consisting of a August 27, 2015, pre-operative report by Dr. Todd Trask, a August 27, 2015 operative report, and a subsequent radiology report, "is significant and [ ] no fact finder has made findings pursuant thereto." The Commissioner, while arguing in her own Motion for Summary Judgment that substantial evidence supports the ALJ's decision, and that the decision comports with applicable law, contends in response to Woolwine's Motion for Summary Judgment that her "new evidence" is not significantly different from the evidence the ALJ had and considered in the August 27, 2015 decision.

## II. Administrative Proceedings

April 16, 2014, Woolwine filed an application for DIB, claiming that she has been disabled since April 30, 2013, as a result of spinal stenosis, degenerative disc disease, and osteoarthritis. The Social Security Administration denied the application at the initial and reconsideration stages. After that, Woolwine requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, David R. Gutierrez, held a hearing on June 4, 2015, at which Woolwine's claims were considered *de novo* (Tr. 26-49). On August 27, 2015, the ALJ issued his decision finding Woolwine not disabled (Tr. 11-21.

Woolwine sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On October 25, 2016, the Appeals Council found no basis for review (Tr. 1-3) and the ALJ's decision thus became final.

Woolwine filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236

(5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

IV. **Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the

burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Woolwine had not engaged in substantial gainful activity since April 30, 2013, her alleged onset date. At step two, the ALJ found that Woolwine had, as severe impairments: degenerative disc disease of the lumbar spine; status-post lumbar fusion and revision; left lumbar radiculopathy; and obesity. At step three, the ALJ concluded that Woolwine did not have an impairment or combination of impairments that met or medically equaled a listed impairment, including Listing 1.04. The ALJ then, prior to consideration of step four, determined that Woolwine had the residual functional capacity ("RFC") to perform a limited range of light work: "she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand and walk 6 hours in an 8-hour workday; she can sit 6 hours in an 8-hour workday; she requires a sit/stand option wherein she sit[s] for thirty minutes, then stands and stretches for five minutes, but not leave the workstation; she cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps, balance, stoop, kneel, crouch, and crawl; she can occasionally reach overhead bilaterally; she can constantly reach, handle, finger, and feel bilaterally; [and] she should avoid moderate exposure to vibrations." (Tr. 16). Using that RFC, and based on the testimony of a vocational expert, the ALJ determined at step four that Woolwine could not perform her past work. At step five, using that same RFC, and based on the vocational expert's response to hypothetical questions, the ALJ determined that Woolwine could perform work that exists in significant numbers in the national economy, including

general clerk, administrative clerk, and mail clerk, and that she was, therefore, not disabled.

In this appeal, Woolwine maintains that the ALJ's opinion is not supported by substantial evidence because it, and the ALJ's credibility determinations relative to her complaints of pain, are not entirely consistent with the new evidence she submitted to the Appeals Council. According to Woolwine, remand is warranted so that the new evidence she submitted to the Appeals Council can be fully considered by the ALJ.

## V. Discussion – New Evidence

The new evidence submitted by Woolwine to the Appeals Council consists of a one page History and Physical, dated August 27, 2015 and signed by Dr. Todd W. Trask, a three page operative report, dated August 27, 2015, and a September 18, 2015 radiology report. The "History of Present Illness: and Physical Examination" sections of Dr. Trask's August 27, 2015 History and Physical pre-operative report recite, as follows, Woolwine's complaints, Dr. Trask's physical examination findings, and Dr. Trask's recommendations for additional surgery:

> **HISTORY OF PRESENT ILLNESS:** Mrs. Amy Woolwine is a 47-year-old right-handed lady, who has had severe problems with her lower back since at least 2012. She had a laminectomy and fusion performed in 2012 at L2-L3 and L3-L4, unfortunately her symptoms persisted. She had a re-operation in December 2013 because of nonunion at both levels. That surgery was completed, but she continued to have symptoms. She is having bilateral lower extremities sciatica especially on the left. Her symptoms are worse with walking and standing. She can hardly drive at all. She has had physical therapy, pain management and nerve blocks without any relief.
>
> \* \* \*
>
> **PHYSICAL EXAMINATION:** She is awake, alert and oriented x3. Her Cranial nerves are intact. Motor examination is full throughout. Her height is 5 feet and 3 inches. She weighs 200 pounds. Her gait is normal. Patrick's sign negative

bilaterally.

> I looked at her studies, lumbar myelogram and CT. She has spondylolisthesis there at L4-L5. I think she has solid fusions now at L2-L3 and L3-L4. She has spinal stenosis at L4-L5. At this point I think she needs a fixation there at L4-L5 and decompression. I am wondering if this was at the level that needed to be done all along. I think the best approach is a lateral approach with subsequent decompression/revision of her posterior hardware.

(Tr. 603). Dr. Trask's three page operative report reflects the surgery he recommended to Woolwine: "Right lateral transpsoas interbody fusion, L4-L5 with 10x18x50x8 degree lordotic LLIF cage, Cellentra bone graft followed by posterior removal of previous spinal instrumentation followed by L4-L5 pedicle screw instrumentation using intraoperative O-arm and stealth neuronavigation." (Tr. 604). The Post-surgical x-rays taken on September 18, 2015, revealed:

> Compared to prior exam the areas of anterior and posterior fusion are stable. There is graft material within the L2-3, L3-4, and L4-5 disks. There is posterior fusion from L4-L5 with pedicle screws connected by vertical rods. There are areas of laminectomy. Skin staples and overlying structures obscure some detail. The vertebral body and disk space height and alignment and degenerative changes [are] stable. No acute findings are seen.

(Tr. 607). It is these five pages of medical records that Woolwine argues should be considered by the ALJ on remand. Woolwine does not specifically argue how these five pages of records affect the ALJ's determination at step five, but does allude to the ALJ's credibility finding in both her Motion for Summary Judgment and in her Reply Brief, as follows:

> Literally one day after the ALJ's decision, i.e., August 27, 2015, Dr. Todd Trask determined that Ms. Woolwine needed yet another surgery to correct the prior surgeries and that he suspected that the prior surgeries had focused on the wrong vertebrae [Tr at 603]. The new evidence was forwarded to the Appeals Council which declined to review the ALJ decision without discussion of the new evidence [Tr at 1, 4]. . . . the medical records beginning August 27, 2015 are certainly significant because they support Ms. Woolwine's testimony. No fact finder has made findings regarding the new clinical reports or attempted to reconcile then with the other evidence in the record. The Court cannot therefore determine whether

8

> substantial evidence supports the Commissioner's decision because the new evidence is significant and because no fact finder has made findings pursuant thereto.
>
> * * *
>
> Thus, at a minimum the new evidence of Dr. Trask supports the need for surgical repair of the L4-L5 level as had been recommended by Dr. Subramanian. But Dr. Trask's evidence can also be taken as an altogether different explanation for Ms. Woolwine's symptoms, i.e., spondylolisthesis, a condition which neither Dr. Subramanian or the ALJ had definitively considered. A fact-finder, especially with the help of an expert, could well conclude that spondylolisthesis adequately explains Ms. Woolwine's severe symptoms even though test results for herniated discs and nerve root impingement were negative. This additional evidence is precisely of the type that calls for remand to the fact-finder because the Court is unable to determine, from review of the record as a whole, if substantial evidence supports the Commissioner's denial of benefits. *Sun v. Colvin*, 793 F.3d 502, 504 (5th Cir. 2015). As in *Sun*, Dr. Trask's opinion and Ms. Woolwine's August of 2015 surgery create a considerable uncertainty that has not been addressed or resolved by a fact finder; and also, as in *Sun*, the ALJ indicated that the discrepancy between Ms. Woolwine's testimony and the medical evidence contributed to his determination that she was not credible [Tr at 17, 18, 19]. *Id.* at 512, 513.

Plaintiff's Motion for Summary Judgment (Document No. 15) at 5; Plaintiff's Reply (Document No. 17) at 2.

Under Fifth Circuit precedent, "evidence submitted for the first time to the Appeals Council is part of the record on appeal." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Therefore, when a claimant submits new evidence and the Appeals Council denies review after considering the evidence, "the Commissioner's final decision necessarily includes the Appeal Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id.* at 336 (internal quotation marks and citations omitted). The Appeals Council is not, however, required to provide a detailed analysis of, or otherwise explain the weight to be given, to new evidence. *See Higginbotham*, 405 F.3d at 335 n.1. Remand is warranted only if the new evidence *dilutes* the record

to such an extent that the ALJ's decision become insufficiently supported. *Higginbotham v. Barnhart*, 163 F.App'x 279, 281-82 (5th Cir. 2006)(emphasis added).

In *Sun v. Colvin*, the authority relied on by Woolwine in both her Motion for Summary Judgment and her Reply Brief, medical records that existed at the time of the ALJ's opinion were submitted to the Appeals Council in a request for review. The Appeals Council denied review but made no comment on those medical records. While the Fifth Circuit concluded that the Appeals Council had no duty to discuss the newly submitted evidence or give reasons for its denial of review, the newly submitted evidence had to be considered by the District Court in determining, under § 405g, whether "substantial evidence support[ed] the ALJ's denial of benefits." *Sun*, 793 F.3d at 512. Finding the newly submitted medical records to be "significant" and supportive of the claimant's testimony about her subjective complaints, the Fifth Circuit concluded that remand was warranted so that a fact finder could consider and/or "reconcile" the medical records "with other conflicting and supporting evidence in the record."

In this case, the new evidence submitted by Woolwine to the Appeals Council was acknowledged and considered by the Appeals Council, which concluded, as follows, that the new evidence provided no basis for review of the ALJ's decision:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's actions, findings, or conclusions is [sic] contrary to the weight of the evidence currently of record.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 2). That determination by the Appeals Council, which is in turn dependent, at least in part, on

the ALJ's assessment of Woolwine's subjective complaints and her credibility, cannot be completely reconciled with Woolwine's new evidence.

The record shows that Woolwine has experienced back pain since 2012. Diagnostic imaging in 2012 showed disc height loss at L2-3 and L3-4 (Tr. 224). Woolwine had a lumbar fusion at L2-3 and L3-4 in November 2012, which did not resolve her symptoms. Diagnostic imaging in 2013 revealed lumbosacral radiculopathy and neural foraminal narrowing at L2-3 and L3-4 (Tr. 234, 238). In December 13, 2013, Woolwine underwent a lumbar fusion revision at L2-4. Following that surgery, she continued to experience low back pain with associated pain and radiation to her gluteal region and her lower extremities, and was diagnosed with lumbosacral radiculitis, spinal stenosis, and lumbar and sacral osteoarthritis. (Tr. 324-331). Physical therapy, which she attended from April to August 2014, did not appreciably help with her complaints of pain. (Tr. 517-535). In November 2014, diagnostic imaging showed some degenerative changes at the L4-5 and L5-S1 levels, a "2 millimeter disk protrusion with moderate left foraminal stenosis," and "severe chronic with subacute (active) denervation, primarily in the left radicle distribution." (Tr.539-546). In April 2015, there was tenderness in Woolwine's lumbar region around L4, L5 and S1, as well as an equivocal result on a straight leg raise test bilaterally. (Tr. 591-593). On June 10, 2015, just days after the hearing before the ALJ, Woolwine saw Dr. Navin Subramanian, complaining of significant leg pain. (Tr. 600-602). Straight leg raise test was positive on the left, and there was some decrease in sensation and light touch in Woolwine's left lower extremities. Dr. Subramanian diagnosed Woolwine with progressive spondylolisthesis at L4-5, and recommended a lumbar laminectomy and fusion at the L4-5 level, noting that the operation was "unlikely to relieve 100% of symptoms, and that the goal of the surgery is to improve the pain as much as possible." (Tr. 600-602).

In rejecting Woolwine's subjective complaints of disabling pain as not fully credible, the ALJ relied heavily on the fact that she had a consistently normal gait, normal muscle strength and generally no significant neurological deficits. He also relied heavily on what he characterized as Woolwine's reports that "she enjoyed gardening, took daily strolls, she could shop in stores, and she could drive" (Tr. 18). What the ALJ did not recognize, and could not in the absence of Dr. Trask's notes, was that there was an anatomical basis for Woolwine's continued complaints of disabling pain – spondylolisthesis, which is the "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1754 (32nd Ed. 2012). While Dr. Subramanian diagnosed Woolwine with progressive spondylolisthesis at L4-5 in June 2015, the ALJ did not acknowledge that diagnosis in his decision and instead merely focused on Woolwine's "full strength and no evidence of gait disturbance" (Tr. 18).

The ALJ concluded in his August 26, 2015, decision that "the evidence cannot be fully reconciled with the level of pain and limiting effects of the impairments that the claimant has alleged." That determination may well have been different given the objective medical evidence in Dr. Trask's notes and his operative report of Woolwine's spondylolisthesis.[2] These circumstances, while not directly akin to those at issue in *Sun*, are sufficiently close to warrant a remand for

---

[2] It also must be noted, although the issue was not specifically raised by Plaintiff in this appeal, that the ALJ's characterization of Woolwine's reports that "she enjoyed gardening, took daily strolls, she could shop in stores, and she could drive" are not completely accurate. Woolwine did not report that she currently enjoys and currently and engages in gardening, or that she takes daily strolls. Instead, in her Adult Function Report, Woolwine reported that she walks to the mailbox or down the street if she was "able," that she cannot bend down to load or unload the dishwasher or clothes dryer, and can only sit in the garden and look, but "cannot bend or stretch to get the weeds or dig." (Tr. 174-180).

consideration of Woolwine's new evidence.

## VI. Conclusion and Order

Based on the foregoing and the conclusion that the new evidence submitted by Woolwine to the Appeals Council does require reconciliation with the ALJ's credibility determination, as was generally the case in *Sun*, the Court

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, and this matter is REMANDED to the Social Security Administration pursuant to 42 U.S.C. § 405g, for further proceedings consistent with this opinion.

Signed at Houston, Texas, this 5th day of February, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE